**In re Anonymous No. 101 D.B. 90**

Disciplinary Docket No. 101 D.B. 90.

KERNS, *Member,* November 17, 1992—Pursuant to Rule 208(d)(2) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendation to your honorable court with respect to the above-captioned petition for discipline.

## HISTORY OF PROCEEDINGS

On September 6, 1990, a petition was filed before the Disciplinary Board of the Supreme Court of Pennsylvania against the respondent, [    ]. The petition for discipline arose out of respondent's handling of a real estate closing. The pertinent facts are as follows:

On August 15, 1987, [respondent] was retained by [A] relative to a purchase of real estate. Respondent agreed to represent [A] for a total fee of $175 and recording costs of $14, with the total of $189 to be paid out at the time of closing. It was further agreed that [respondent] would at the time of closing retain funds for the payment

of liens and charges against the real estate. On October 8, 1987, the transaction closed and [A] paid the respondent's fee in cash. Also at that time respondent obtained a check for $3,500 representing the balance of the consideration due the complainant. Of that $3,500, $1,537.21 was for the payment of liens against the real estate. Any balance remaining in the possession of [respondent] was by agreement due the seller, who is not a party to this action.

The following day [respondent] retained in cash the balance of $1,537.21 after paying the obligation to the seller's attorney. This balance constituted escrow funds which were distributable on behalf of the complainant and seller. During the next two months, respondent paid $466.32 of the obligations relative to the subject conveyance; [respondent] converted $1,084.89 to his own uses. The respondent at no time maintained any escrow account for the maintenance of [A's] funds. In December 1987, [A] requested an accounting from the respondent, and by letter respondent indicated that he would fully account to [A] by mid-January 1988. This was despite the fact that nothing remained to be clarified relative to a lien on the subject property. After repeated inquiries on behalf of [A] and finally inquiries in August 1988 from the Office of Disciplinary Counsel, the respondent paid $751.23 to satisfy the lien against the subject property. [Respondent] used his own personal funds to make this payment, and $333.66 was still due the seller. Subsequently in October 1988, the lien holder returned to [respondent] $426.49 of the $751.23 he paid in August 1988. Respondent did nothing with this check until November 1989 when, at the suggestion of the Office of the Disciplinary Counsel, he sent the proceeds to the seller's counsel. [Respondent] has never fully accounted to his client, [A]. Respondent has also never maintained

any appropriate financial or other records regarding this transaction.

No answer to the petition for discipline was filed by [respondent] and on October 12, 1990 this matter was referred to Hearing Committee [    ].  Subsequently respondent filed an answer to the petition for discipline admitting all charges against himself.  However, [respondent] requested mitigation based on the fact that he suffered from acute alcoholism at the time the matter in question occurred.  He successfully completed an in-patient alcohol treatment program, has not been drinking for over a year and a half and regularly attends Alcoholics Anonymous meetings.

[Respondent] by his admitted conduct violated the following Disciplinary Rules of the Code of Professional Responsibility for conduct prior to April 1, 1988, and the following Rules of Professional Conduct for conduct subsequent to April 1, 1988:

(a) D.R. 1-102(A)(4), prohibiting an attorney from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation;

(b) D.R. 6-101(A)(3), dealing with neglect of a legal matter;

(c) D.R. 9-102(A), requiring that an attorney deposit funds of a client into an identifiable escrow account;

(d) D.R. 9-102(B)(3), requiring that an attorney maintain complete records of all funds of a client coming into the possession of the lawyer and render appropriate accounts to the client regarding them;

(e) R.P.C. 1.3, requiring that an attorney act with reasonable diligence and promptness in representing a client;

(f) R.P.C. 1.4(a), requiring an attorney to keep a client informed throughout of the status of a matter and to promptly comply with reasonable requests for information;

(g) R.P.C. 1.15(a), requiring an attorney to maintain funds of a client or a third party in an escrow account;

(h) R.P.C. 1.15(b), requiring an attorney to notify a client or a third party of funds in the possession of the lawyer payable to the client or third party, and to promptly pay over those funds;

(i) R.P.C. 8.4(c), prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation.

As previously noted, [respondent] filed an answer and admitted all allegations and requested mitigation. A hearing was held on December 19, 1990 where he was allowed to testify at length on his own behalf regarding his severe state of alcoholism and subsequent steps to become and remain sober. A report of the Hearing Committee was filed on May 15, 1991, recommending an 18-month suspension with 6 months served and 12 months stayed. Also included was a two-year conditional probation during which [respondent] was directed to abstain from consuming alcohol, a sobriety monitor was to be appointed for respondent, a financial and practice monitor was to be appointed for respondent, and finally respondent was to take the next scheduled Pennsylvania Basic Legal Practice Course offered by the Pennsylvania Bar Institute.

On June 11, 1991 respondent's brief on exceptions was filed alleging that implementation of the Hearing Committee's recommendation would permanently end his legal career, due to the fact that he is a sole practitioner, and that he has gotten in control of his alcohol abuse. Subsequently the Office of the Disciplinary Counsel filed a brief opposing respondent's exception to the report of the Hearing Committee. Petitioner filed its brief on exceptions, citing the purpose of the disciplinary system to protect the public from unfit attorneys and to maintain the integrity of the legal system; and further that the com-

mittee's recommendation serves the interest of both the disciplinary system and the respondent and thus should be adopted. These matters were referred to the board and were adjudicated on July 26, 1991.

## FINDINGS OF FACT

Respondent has admitted all charges and allegations made by the petitioner and thus the Hearing Committee's findings of fact set forth are true and correct as follows:

(1) The respondent, [    ], Esq., was born in 1949, admitted to practice law in Pennsylvania in 1979, and currently maintains an office for the practice of law at [    ].

(2) On August 15, 1987 respondent was retained by [A] relative to his contemplated purchase of real estate in [    ], [    ] County, Pa. At the time of respondent's retention, complainant made a $1,500 down payment against the total consideration due of $5,000.

(3) The respondent agreed to represent the complainant for a total fee of $175 and recording costs of $14, with the total of $189 to be paid at the time of closing. The respondent also agreed with the seller's attorney, [B], that the respondent would at the time of closing retain funds for the payment of any liens and charges against the real estate.

(4) On October 8, 1987, the transaction closed and complainant gave the respondent $189 in cash, consisting of the respondent's fee of $175 and $14 to record the deed. Complainant produced a check of the [C] Federal Savings and Loan, dated October 8, 1987, payable to the respondent for $3,500, representing the balance of the consideration due the seller.

(5) The respondent acted as the settlement agent for the buyer and the seller and respondent was to retain

$1,537.21 from the $3,500 to pay obligations of the seller that constituted liens on the property conveyed. Any balance remaining in the possession of the respondent after the payment of the seller's obligations was due the seller.

(6) The $3,500 check the respondent received on October 8, 1987 represented funds he held in a fiduciary capacity. On October 9, 1987, the $3,500 check was cashed by respondent at the [D] Bank of [    ] and he obtained a cashiers check no. 04068771 of that bank for $1,962.79 payable to [B], Esq., the seller's attorney, which check the respondent gave to [B] on that date.

(7) The respondent on, October 9, 1987, retained in cash the balance of $1,537.21 remaining from the check of $3,500 after obtaining the check for $1,962.79 payable to [B], Esq. This $1,537.21 and the $14 recording fee received October 8, 1987 constituted escrow funds totaling $1,551.21 which were distributable on behalf of the buyer and seller.

(8) In 1987 the respondent paid, in cash, obligations relative to the real estate conveyance in the amount of $466.32.

(9) Subsequent to the payments in November and December 1987, totaling $466.32, the respondent converted the balance of $1,084.89 in escrow funds to his own use. Respondent at no time pertinent hereto maintained any escrow account for the maintenance of client's funds.

(10) By letter of December 23, 1987, the respondent advised complainant, who had requested an accounting, that the respondent had contacted the Welfare Department in Pennsylvania and that the respondent anticipated concluding all matters relative to the settlement by mid-January 1988, and that he would then fully account to [A]. The respondent had been advised by notice of the Department of Public Welfare dated September 29, 1987

that the payoff on the lien against the [E] property was $751.23. There was nothing in December 1987 that remained to be clarified relative to the DPW lien.

(11) On February 10, 1988 the respondent wrote to [A], in response to [A's] continued inquiries regarding the status of the liens and the promised accounting, and misrepresented to complainant that respondent was waiting for the results of a certified tax search he had ordered from the courthouse. There was no reason to order a tax search relative to the property conveyed approximately four months after the closing.

(12) On August 11, 1988, as a result of inquiries from the Office of Disciplinary Counsel on July 22 and August 5, 1988, the respondent paid $751.23 to the Department of Public Welfare to satisfy the lien against [A's] property. Personal funds of the respondent or his wife were used to make this payment. After this payment the respondent remained accountable for $333.66 in funds relative to the subject conveyance. The $333.62 was payable to the seller as it represented the balance remaining after the payment of those obligations required to be paid to pass clear title to the buyer.

(13) By check dated October 19, 1988, the Department of Public Welfare returned to the respondent $426.49 of the $751.23 he paid in August 1988. The respondent did nothing with this check until on or about November 1989 when, at the suggestion of the Office of Disciplinary Counsel, he had the check reissued and tendered the proceeds to the seller's counsel. The respondent in November 1989 also returned to the seller the balance of $144.66 which the Office of Disciplinary Counsel suggested to the respondent in July 1989 might be due the seller. (The $144.66 was based on a computational error. The respondent actually owed the seller $333.66 so a balance

of $189 was still due.) The source of the $144.66 was personal funds of the respondent or his wife.

(14) Until November 1990 the respondent remained accountable to the seller for $189 and had never fully accounted to his client, [A]. The respondent has never maintained any appropriate financial or other records regarding this transaction.

(15) On November 5, 1990, the respondent made [A] whole by the payment to him of $581.45. This payment was from personal funds of the respondent as the respondent had failed to provide for the grantor to [A] to pay the 1987 real estate taxes due as of the October 1987 closing. The seller was then responsible for a pro rata share of the 1987 real estate taxes and the respondent's payment of $581.45 to [A] as reimbursement for their paying these taxes extinguished the $189 due the seller by the respondent relating to the October 1987 closing.

(16) Respondent is an alcoholic and was impaired by his alcohol addiction during the time the instant misconduct occurred.

(17) Respondent's impaired condition was a causal factor in respondent's misconduct.

## DISCUSSION

The respondent admittedly has violated the Disciplinary Rules and Rules of Professional Conduct. Respondent urges that the recommended six months of the suspension be served, due to the mitigating evidence concerning his alcoholism, be stayed. Respondent offered lengthy testimony detailing his many years of dependence on alcohol and the resulting impaired ability to consider his conduct. He discussed the lack of conscious intent to injure another party but does admit to negligence in drinking and trying to practice law. These circumstances have resulted in

a steady decline in his professional practice since he was admitted to the bar in 1977. He testified at the hearing that he would wake up in the morning and have something to drink to steady his nerves. His tolerance to alcohol increased and his body started deteriorating, his pancreas was affected, then he started to get fuzzier and foggier.

He would hide a fifth of alcohol in the toilet tank. He was only making $15,000 a year in gross receipts. Respondent had a liver impairment and elevated liver enzymes, and his mental capabilities were debilitated because of excess ammonia production because of the liver breakdown.

By allowing conduct such as the respondent's to go without actual suspension will be against the maintenance and integrity of the legal system. It must be noted that the primary purpose of this disciplinary system is to maintain the integrity of the legal system in addition to protecting the public from unfit attorneys. *Office of Disciplinary Counsel v. Lucarini,* 504 Pa. 271, 472 A.2d 186 (1983).

Similar fact situations have resulted in suspensions from the practice of law. See *In re Anonymous No. 42 D.B. 87,* 49 D.&C.3d 488 (1987). Respondent's admitted actions indicate that he handled the funds of a client in a questionable fashion, and did not fully account to his client. These actions by respondent should result in his suspension from the practice of law for an appropriate period of time. *In re Anonymous No. 91 D.B. 87,* 49 D.&C.3d 577 (1988).

Respondent's admitted neglect in addressing the subject real estate transaction coupled with his admission of his alcohol-related problems indicates respondent has made a positive step forward in dealing professionally with his practice of law. His health is improving and he has been sober for one year and nine months at the time

of hearing before the board. He successfully completed in-patient treatment at [    ] in [    ], Pa., and has followed the program established.

There is a prior history of two informal admonitions in April 1979 and March 1981 and a private reprimand in May 1987. This prior history, of course, should be considered as an aggravating factor but can be balanced with the mitigating factors as set forth by the respondent's testimony and evidence. The Supreme Court of Pennsylvania has allowed consideration of mitigating factors such as alcoholism in the imposition of disciplinary sanctions for ethical violations. *In re Anonymous No. 37 D.B. 88,* 50 D.&C.3d 526 (1989). The respondent as a sole practitioner is completely aware of the trust placed in him by his clients. He admits the board's recommendations are appropriate in this situation except for a six-month suspension to be served and not stayed. This is further indication of respondent's willingness to see the wrongness in his conduct and accept the ramifications of his action and monitor his behavior in the future.

Disciplinary Board Rules paragraph 89.293 allows substance abuse probation. In this case, as required by the rules, the respondent presented testimony from a counseling supervisor. He is a fully certified addictions counselor in the State of Pennsylvania and a member of the American Academy of Counseling and Development. His testimony at pages 38 through 40 clearly sets forth the respondent's condition, that respondent was physically and mentally impaired by his substance abuse, and that this condition was a factor in causing his misconduct. As set forth in the rules this satisfies the requirement set forth in *Office of Disciplinary Counsel v. Braun,* 520 Pa. 157, 553 A.2d 894 (1989).

The Rules of the Disciplinary Board paragraph 89.293(c) provides that a sobriety monitor shall be ap-

pointed in cases of drug or alcohol abuse. [F] has agreed in writing to serve as [respondent's] sobriety monitor. [F] is involved in the Pennsylvania Bar Association Drug and Alcohol Committee and thus can serve as [respondent's] sobriety monitor by carrying out all the duties imposed by the rules. Respondent has received a two-year probationary period and the sobriety monitor shall perform his duties for that period also in accordance with paragraph 89.293(c) of the Rules.

While keeping in mind the prior misconduct of respondent, the testimony of respondent as well as the expert witness presented by him provide a strong basis for recommending that a probationary period be set with certain conditions as provided by Rules of Disciplinary Conduct section 89.291.

## RECOMMENDATION

The board recommends that respondent be suspended from the practice of law for 24 months; six months to be served and 18 months stayed. Following the six-month period of suspension to be served, a two-year conditional probation will begin. The conditions attached to this probationary period are as follows:

(a) Respondent shall abstain from using alcohol or any other mind-altering chemical.

(b) Respondent shall attend Alcoholics Anonymous meetings on a weekly basis.

(c) Respondent shall maintain weekly telephone contact with his Alcoholics Anonymous sponsor and furnish the sobriety monitor with the sponsor's name, address and telephone number.

(d) Respondent shall provide written verification, on a form provided by the board, to his sobriety monitor

of regular weekly attendance at an Alcoholics Anonymous meeting.

(e) Respondent shall cooperate fully with his sobriety monitor.

A sobriety monitor shall be appointed for respondent pursuant to board rules section 89.293(c) ([F], Esq., of [   ], Pa., has indicated a willingness to serve as respondent's sobriety monitor). [F] is an attorney admitted to practice law in this Commonwealth, in good standing, and is involved in the Pennsylvania Bar Association Drug and Alcohol Committee.

The sobriety monitor shall do the following:

(a) Monitor the compliance by the respondent with the terms and conditions of the order imposing probation;

(b) Assist the respondent in arranging any necessary professional or substance abuse treatment;

(c) Meet with the respondent at least twice a month and maintain weekly telephone contact with the respondent;

(d) Maintain direct contact with the Alcoholics Anonymous sponsor of the respondent;

(e) File with the secretary of the board quarterly written reports; and

(f) Immediately report to the secretary of the board any violations by the respondent of the terms and conditions of the probation.

A financial and practice monitor shall be appointed for respondent during the period of his stayed suspension and probation ([G], Esq., of [   ], Pa., has indicated a willingness to serve as respondent's practice monitor).

The financial and practice monitor shall do the following during the period of respondent's stayed suspension and probation:

(a) Periodically examine the respondent's office and escrow accounts, client ledgers, and other financial records to ensure that the respondent has appropriately established such records and is aware of the proper manner of handling funds and keeping appropriate records pertaining thereto;

(b) Periodically, but not less than once every 60 days, examine the respondent's financial records to ensure continued compliance with proper handling of funds and maintenance of appropriate records;

(c) Periodically examine the respondent's law office organization and procedures to ensure that the respondent is maintaining an acceptable tickler system, filing system, and other administrative aspects of the respondent's practice;

(d) Meet with the respondent at least monthly to examine respondent's progress toward satisfactory and timely completion of clients' legal matters;

(e) File with the secretary of the board quarterly written reports that the above conditions have been met; and

(f) Immediately report to the secretary of the board any violation by the respondent of the terms and conditions of probation;

(7) The sobriety monitor and financial monitor must be members of the local Drug and Alcohol Committee.

The board recommends further that respondent be ordered to pay the expenses of investigating and prosecuting this matter, pursuant to Rule 208(g), Pa.R.D.E.

Messrs. Keller and Paris did not participate in the adjudication.

## ORDER

And now, November 17, 1992, the report and recommendations of the Disciplinary Board of the Supreme Court of Pennsylvania dated November 21, 1991, are

approved, and it is ordered that [respondent] be suspended from the practice of law for a period of 24 months; six months to be served and 18 months stayed. Following the six-month period of suspension to be served, a two-year conditional probation will begin. The conditions attached to this probationary period are as follows:

(a) Respondent shall abstain from using alcohol or any other mind-altering chemical.

(b) Respondent shall regularly attend Alcoholics Anonymous meetings on a weekly basis.

(c) Respondent shall maintain weekly telephone contact with his Alcoholics Anonymous sponsor and furnish the sobriety monitor with the sponsor's name, address and telephone number.

(d) Respondent shall provide written verification, on a form provided by the board, to his sobriety monitor of regular weekly attendance at an Alcoholics Anonymous meeting.

(e) Respondent shall cooperate fully with his sobriety monitor.

A sobriety monitor shall be appointed for respondent pursuant to Board Rule Section 89.293(c) ([F], Esq., of [   ], Pa., has indicated a willingness to serve as respondent's sobriety monitor). [F] is an attorney admitted to practice law in this Commonwealth, in good standing, and is involved in the Pennsylvania Bar Association Drug and Alcohol Committee.

The sobriety monitor shall do the following:

(a) Monitor the compliance by the respondent with the terms and conditions of the order imposing probation;

(b) Assist the respondent in arranging any necessary professional or substance abuse treatment;

(c) Meet with the respondent at least twice a month and maintain weekly telephone contact with the respondent;

(d) Maintain direct contact with the Alcoholics Anonymous sponsor of the respondent;

(e) File with the secretary of the board quarterly written reports; and

(f) Immediately report to the secretary of the board any violations by the respondent of the terms and conditions of the probation.

A financial and practice monitor shall be appointed for respondent during the period of his stayed suspension and probation ([G], Esq., of [    ], Pa., has indicated a willingness to serve as respondent's practice monitor).

The financial and practice monitor shall do the following during the period of respondent's stayed suspension and probation:

(a) Periodically examine the respondent's office and escrow accounts, client ledgers, and other financial records to ensure that the respondent has appropriately established such records and is aware of the proper manner of handling funds and keeping appropriate records pertaining thereto;

(b) Periodically, but not less than once every 60 days, examine respondent's financial records to ensure continued compliance with proper handling of funds and maintenance of appropriate records.

It is further ordered that respondent comply with all the provisions of Rule 217, Pa.R.D.E., and he shall pay the expenses of investigating and prosecuting this matter, pursuant to Rule 208(g), Pa.R.D.E.

Messrs. Justice Larsen and Papadakos dissent and would enter an order suspending respondent for a period of 24 months.